# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| COLLECTION XIIX, LTD. |  |
| Plaintiff, |  |
| v. | Court No. 21-00153 |
| UNITED STATES OF AMERICA; OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE; KATHERINE TAI, U.S. TRADE REPRESENTATIVE; U.S. CUSTOMS & BORDER PROTECTION; TROY A. MILLER, U.S. CUSTOMS & BORDER PROTECTION ACTING SENIOR OFFICIAL, |  |
| Defendants. |  |

## **COMPLAINT**

Pursuant to the Rules of the United States Court of International Trade, Plaintiff Collection XIIX, Ltd. by and through their attorneys, alleges and states as follows:

1. This action concerns Defendants' prosecution of an unprecedented, unbounded, and unlimited trade war impacting over $500 billion in imports from the People's Republic of China. This Complaint focuses on Defendants' unlawful escalation of that trade war through the imposition of a third round of tariffs on products covered by so-called "List 3." *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018) and a fourth round, the so-called "List 4" *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019).

2. The Trade Act of 1974 ("Trade Act") did not confer authority on Defendants to litigate a vast trade war for however long, and by whatever means, they choose. The Office of the

United States Trade Representative ("USTR") conducted an investigation into China's unfair intellectual property policies and practices pursuant to Section 301 of the Trade Act (19 U.S.C. § 2411).  Section 304 of the Trade Act (19 U.S.C. § 2414) required USTR to determine what action to take, if any, within 12 months after initiation of that investigation. But USTR failed to issue List 4  within that window. USTR may not fall back on its "modification" authority under Section 307 of the Trade Act (19 U.S.C. § 2417) to salvage List 4. Section 307 of the Trade Act does not permit USTR to expand the imposition of tariffs to other imports from China for reasons untethered to the unfair intellectual property policies and practices it originally investigated under Section 301 of the Trade Act. Yet that is exactly what Defendants did here when they promulgated the List 4 (and prior to that, List 3) duties in response to China's retaliatory duties and other unrelated issues. And even if USTR deems the existing tariffs "no longer appropriate," as it also did here, the Trade Act permits USTR only to delay, taper, or terminate—not ratchet up—the actions it has already taken.

3.      The arbitrary manner in which Defendants implemented the List 4 tariff action also violates the Administrative Procedure Act ("APA"). USTR (1) failed to provide sufficient opportunity for comment, e.g., requiring interested parties to submit affirmative *and* rebuttal comments *on the same day*; (2) failed to consider relevant factors when making its decision, e.g., undertaking no analysis of the supposed "increased burden" imposed on U.S. commerce from the unfair policies and practices that it originally investigated; and (3) failed to connect the record facts to the choices it made. Indeed, despite receiving thousands of comments, USTR said nothing about how those comments shaped its final promulgation of List 4. USTR's preordained decision-making bears no resemblance to the standards that the APA demands.

4. The Court should set aside Defendants' actions as *ultra vires* and otherwise contrary to law, as well as order Defendants to refund (with interest) any duties paid by Plaintiff pursuant to List 4.

## JURISDICTION

5. The Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(B).

## PARTIES

6. Plaintiff Collection XIIX, Ltd. is a privately owned company that imports women's accessories. Plaintiff employs 40 individuals in the United States. Plaintiff imports under various HTS subheadings that are subject to the additional *ad valorem* duties under List 4A.

7. Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

8. The Office of the USTR is an executive agency of the United States charged with investigating a foreign country's trade practices under Section 301 of the Trade Act and implementing "appropriate" responses, subject to the direction of the President. USTR conducted the Section 301 investigation at issue and made numerous decisions regarding List 4.

9. Katherine Tai currently holds the position of the USTR.

10. Defendant U.S. Customs & Border Protection ("CBP") is the agency that collects duties on imports. CBP collected payments made by Plaintiff to account for the tariffs imposed by USTR under List 4.

11. Defendant Troy A. Miller is the Acting Senior Official of CBP. In this capacity, he oversees CBP's collection of duties paid by Plaintiff under List 4.

## STANDING

12. Plaintiff has standing to sue because it is "adversely affected or aggrieved by agency action within the meaning of" the APA. 5 U.S.C. § 702; *see* 28 U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5."). Tariffs imposed by Defendants pursuant to List 4 adversely affected and aggrieved Plaintiff because it has been required to pay these unlawful duties.

## TIMELINESS OF THE ACTION

13. A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

14. This matter contests multiple unlawful actions taken by Defendants, including the actions that culminated in implementation of List 4, including the *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019); and the ongoing, unlawful List 4 duty assessments that commenced on September 1, 2019. Plaintiff has therefore timely filed this action within two years of entries where payment of Section 301 duties were paid.

## RELEVANT LAW

15. Section 301 of the Trade Act authorizes USTR to investigate a foreign country's trade practices. 19 U.S.C. § 2411(b). If the investigation reveals an "unreasonable or discriminatory" practice, USTR may take "appropriate" action, such as imposing tariffs on imports

3

from the country that administered the unfair practice. *Id.* § 2411(b), (c)(1)(B).

16. Section 304 of the Trade Act requires USTR to determine what action to take, if any, within 12 months after the initiation of the underlying investigation. *Id.* § 2414(a)(1)(B), (2)(B).

17. Section 307 of the Trade Act (in pertinent part) allows USTR to "modify or terminate" an action taken pursuant to Section 301 of the Trade Act either when the "burden or restriction on United States commerce" imposed by the investigated foreign country's practice has "increased or decreased" or when the action "is no longer appropriate." *Id.* § 2417(a)(1)(B), (C).

## PROCEDURAL HISTORY

### I. USTR's Investigation

18. The current U.S.-China trade war grew from a narrow dispute. On August 14, 2017, President Trump directed Ambassador Lighthizer to consider initiating a targeted investigation pursuant to Section 301(b) of the Trade Act concerning China's laws, policies, practices, and actions related to intellectual property, innovation, and technology. *Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology*, 82 Fed. Reg. 39,007 (Aug. 17, 2017). According to the President, certain Chinese "laws, policies, practices, and actions" on intellectual property, innovation, and technology "may inhibit United States exports, deprive United States citizens of fair remuneration for their innovations, divert American jobs to workers in China, contribute to our trade deficit with China, and otherwise undermine American manufacturing, services, and innovation." *Id.*

19. On August 18, 2017, USTR formally initiated an investigation into "whether acts, policies, and practices of the Government of China related to technology transfer, intellectual

property, and innovation are actionable under [Section 301(b) of] the Trade Act." *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg. 40,213 (Aug. 24, 2017).

20. On March 22, 2018, USTR released a report announcing the results of its investigation. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974* (Mar. 22, 2018), *available at* https://ustr.gov/sites/default/files/Section%20301%20FINALPDF . USTR found that certain "acts, policies, and practices of the Chinese government related to technology transfer, intellectual property, and innovation are unreasonable or discriminatory and burden or restrict U.S. commerce." *Id.* at 17. USTR based its findings on (1) China's use of foreign ownership restrictions, foreign investment restrictions, and administrative licensing and approval processes to pressure technology transfers from U.S. to Chinese companies, *id.* at 45; (2) China's use of licensing processes to transfer technologies from U.S. to Chinese companies on terms that favor Chinese recipients, *id.* at 48; (3) China's facilitation of systematic investment in, and acquisition of, U.S. companies and assets by Chinese entities to obtain technologies and intellectual property for purposes of large-scale technology transfer, *id.* at 147; and (4) China's cyber intrusions into U.S. computer networks to gain access to valuable business information, *id.* at 171. In its report, USTR did not quantify the burden or restriction imposed on U.S. commerce by the investigated practices.

21. On March 22, 2018, USTR published a "Fact Sheet" stating that "[a]n interagency team of subject matter experts and economists' estimates that China's policies result in harm to the U.S. economy of at least $50 billion per year." OFFICE OF THE UNITED STATES TRADE

REPRESENTATIVE, *Section 301 Fact Sheet* (Mar. 22, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/fact-sheets/2018/march/Section-301-fact-sheet. USTR also indicated that, consistent with a directive from President Trump, it would "propose additional tariffs" of 25% *ad valorem* "on certain products of China, with an annual trade value commensurate with the harm caused to the U.S. economy resulting from China's unfair policies." *Id.*; *see Actions by the United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or Actions Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 13,099 (Mar. 27, 2018) (President Trump's directive).

## II.   Lists 1 & 2

22.   Between April and August 2018 (i.e., within the 12-month statutory deadline from the initiation of the investigation in August 2017, *see* 19 U.S.C. § 2414(a)(2)(B)), Defendants undertook a series of actions to remedy the estimated harm to the U.S. economy caused by the investigated unfair practices, ultimately imposing duties on imports from China covered by the so-called Lists 1 and 2.

23.   On April 6, 2018, USTR published notice of its intent to impose "an additional duty of 25 percent on a list of products of Chinese origin." *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 14,906, 14,907 (Apr. 6, 2018).  The products on the proposed list covered 1,333 tariff subheadings with a total value of "approximately $50 billion in terms of estimated annual trade value for calendar year 2018." *Id.* at 14,907.  USTR explained that it chose $50 billion because that amount was "commensurate with an economic analysis of the harm caused by China's unreasonable technology transfer policies to the U.S. economy, as covered by USTR's Section 301 investigation."

OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Under Section 301 Action, USTR Releases Proposed Tariff List on Chinese Products* (Apr. 3, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/april/under-section-301-action-ustr .

24. On June 20, 2018, USTR published notice of its final list of products subject to an additional duty of 25% *ad valorem*, a list commonly known as "List 1." *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 28,710 (June 20, 2018). USTR explained that it had "narrow[ed] the proposed list in the April 6, 2018 notice to 818 tariff subheadings, with an approximate annual trade value of $34 billion." *Id.* at 28,711.

25. On June 20, 2018, at the same time that it finalized List 1, USTR announced that it intended to impose a 25% *ad valorem* duty on a second proposed list of Chinese products in order to "maintain the effectiveness of [the] $50 billion trade action" grounded in its Section 301 investigation. *Id.* at 28,712. USTR announced a proposed "List 2" covering 284 tariff subheadings with "an approximate annual trade value of $16 billion." *Id.* at 28,711-12.

26. On August 16, 2018, USTR published notice of the final list of products subject to an additional duty of 25% *ad valorem* in List 2, comprising "279 tariff subheadings" whose "annual trade value . . . remains approximately $16 billion." *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823, 40,823-24 (Aug. 16, 2018).

### III. <u>List 4</u>

27. As soon as USTR announced the results of its investigation in March 2018, tensions between the governments of China and the United States escalated dramatically. In the months that followed, Defendants wildly expanded the scope of the tariffs imposed under Section 301 of the Trade Act to cover imports worth more than $500 billion—ten times the amount it had deemed "commensurate" with the findings of USTR's original investigation. Defendants did so for reasons untethered to the unfair practices that USTR had investigated, namely China's tit-for-tat countermeasures and a hodgepodge of grievances related to China's role on the world stage. This resulted in List 3.

28. On May 17, 2019, USTR announced its intent to proceed with yet another list—List 4—covering even more products subject to additional duties. Under USTR's proposal, List 4 would impose an additional duty of 25% *ad valorem* on products worth $300 billion. *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 22,564, 22,564 (May 17, 2019). USTR explained that its decision was motivated by China's "retreat[] from specific commitments made in previous [negotiating] rounds [and] announce[ment of] further retaliatory action against U.S. commerce." *Id.*

29. USTR invited the public to comment on proposed List 4 and participate in a hearing. *Id.* The public submitted nearly 3,000 comments. Docket No. USTR-2019-0004, https://beta.regulations.gov/document/USTR-2019-0004-0001. Despite the opportunity to comment, the timeline for participation in the hearing left little room for meaningful input: USTR required witnesses to submit drafts of their testimony by June 10, 2019, some seven days before

the deadline for fully developed written comments, and then it again limited witnesses to five minutes of testimony at the hearing. *Id.*

30. On August 1, 2019, citing China's failure to follow through on agricultural purchases and to reduce exports of fentanyl flowing into the United States, President Trump announced that the List 4 tariffs would become effective September 1, 2019 at a rate of 10% *ad valorem*. @realDonaldTrump, TWITTER (Aug. 1, 2019, 1:26 PM EDT), https://twitter.com/realDonaldTrump/status/1156979446877962243 (noting a "small additional Tariff of 10% on the remaining 300 Billion Dollars of goods and products coming from China into our Country").

31. On August 20, 2019, USTR issued a final notice adopting List 4 in two tranches. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019). List 4A would impose a 10% *ad valorem* duty on goods worth roughly $120 billion, effective September 1, 2019. *Id.* at 43,304. List 4B would impose a 10% *ad valorem* duty on the remaining goods (with limited exclusions "based on health, safety, national security, and other factors"), effective December 15, 2019. *Id.* at 43,305. Once again, USTR did not address any of the nearly 3,000 comments submitted or any of the testimony provided by witnesses, other than to claim that its determination "takes account of the public comments and the testimony." *Id.*

32. As legal support for its action, USTR again cited Section 307(a)(1)(B) and (C) of the Trade Act, and pointed to "China's subsequent defensive actions taken to maintain those unfair acts, policies, and practices as determined in that investigation," including retaliatory tariffs on U.S. imports, retreating from commitments during negotiations, and devaluing its currency. *Id.*

33. On August 30, 2019, USTR published notice of its decision to increase the tariff

9

rate applicable to goods covered by List 4A and List 4B from 10% to 15%. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 45,821 (Aug. 30, 2019). USTR explained that it increased the tariff rate because, shortly after it finalized List 4A and List 4B, "China responded by announcing further tariffs on U.S. goods." *Id.* at 45,822. USTR once again cited to China's retreat from its negotiation commitments and devaluation of its currency as grounds for its action. *Id.*

34. On December 18, 2019, as a result of successfully negotiating a limited trade deal with China, USTR published notice that it would "suspend indefinitely the imposition of additional duties of 15 percent on products of China covered by" List 4B. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 69,447, 69,447 (Dec. 18, 2019). USTR also stated its intent to reduce the tariff rate applicable to products covered by List 4A, *id.*, an action that ultimately became effective on February 14, 2020, when USTR halved the applicable duty rate, *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 3,741 (Jan. 22, 2020).

35. In the months that followed, the United States and China implemented the limited trade deal that they negotiated near the end of 2019. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *United States and China Reach Phase One Trade Agreement* (Dec. 13, 2019), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2019/december/united-states- and-china-reach. During that time, Defendants declined to impose additional duties on imports covered by List 4B, presumably because China had agreed to some new, unrelated obligations under the limited trade deal.

36. The duties imposed on products covered by List 4A remain in effect as of the date of this Complaint. Although the proposed duties on products covered by List 4B remain suspended, President Trump has continued to threaten to impose them if China does not meet its obligations under their limited trade deal. *See, e.g.*, @realDonaldTrump, TWITTER (June 22, 2020, 10:22 PM EDT), https://twitter.com/realDonaldTrump/status/1275252814206447618 ("The China Trade Deal is fully intact. Hopefully they will continue to live up to the terms of the Agreement!") .

## STATEMENT OF CLAIMS

### COUNT ONE

### DECLARATORY JUDGMENT—VIOLATION OF THE TRADE ACT OF 1974

37. Paragraphs 1 through 36 are incorporated by reference.

38. The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

39. The Trade Act of 1974 does not authorize the actions taken by Defendants that resulted in the List 4 tariffs.

40. Pursuant to Section 301 of the Trade Act, USTR may impose tariffs when it determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and action by the United States is appropriate." 19 U.S.C. § 2411(b). USTR failed to predicate its action giving rise to List 3 or List 4 on any such determination.

41. If USTR concludes upon investigation that a foreign country maintains an unfair trade practice, Section 304 of the Trade Act requires USTR to "determine what action, if any," to

take within "12 months after the date on which the investigation is initiated." 19 U.S.C. § 2414(a)(1)(B), (2)(B). USTR's action giving rise to List 3 occurred in September 2018, over a year after USTR initiated the underlying Section 301 investigation on August 18, 2017. USTR's action giving rise to List 4 occurred in August 2019, over two years after USTR initiated the underlying Section 301 investigation on August 18, 2017.

42. Section 307 of the Trade Act does not authorize Defendants to increase tariffs for reasons unrelated to the acts, policies, or practices that USTR investigated pursuant to Section 301 of the Trade Act. Congress did not authorize USTR to escalate its focused investigatory findings into an open-ended trade war.

43. Section 307 of the Trade Act does not authorize Defendants to *increase* tariff actions that are no longer "appropriate," but rather only to delay, taper, or terminate such actions.

44. Plaintiff is therefore entitled to a declaratory judgment that Defendants' actions giving rise to List 4 are *ultra vires* and contrary to law.

## COUNT TWO

### (VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)

45. Paragraphs 1 through 36 are incorporated by reference.

46. The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

47. Defendants exceeded their authority under the Trade Act in promulgating List 4

therefore acted "not in accordance with the law" and "in excess of statutory authority" for the reasons set forth in Count One, Defendants failed to offer any evidence for any asserted "increased burden" from China's intellectual property policies and practices that were the subject of USTR's Section 301 investigation.

48. Defendants also promulgated List 4 in an arbitrary and capricious manner because they did not provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors when making their decisions, and failed to adequately explain their rationale. Defendants' preordained decision-making resulted in the unlawful imposition of tariffs on imports covered by List 4, whose value exceeds $200 billion.

\* \* \*

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court

(1) declare that Defendants' actions resulting in tariffs on products covered by List 4 are unauthorized by, and contrary to, the Trade Act;

(2) declare that Defendants arbitrarily and unlawfully promulgated List 4 in violation of the APA;

(3) vacate the List 4 rulemaking;

(4) order Defendants to refund, with interest, any duties paid by Plaintiff pursuant to List 4;

(5) permanently enjoin Defendants from applying List 4 against Plaintiff and collecting any duties from Plaintiff pursuant to List 4;

(6) award Plaintiff their costs and reasonable attorney fees; and

(7) grant such other and further relief as may be just and proper.

                            Respectfully submitted,

Dated:  April 2, 2021

                    /s/ Robert J. Leo
                    Meeks, Sheppard, Leo and Pillsbury
                    570 Lexington Avenue, Ste. 2405
                    New York, NY 10022
                    (212) 949-7120
                    robert.leo@mscustoms.com
                    *Counsel to Collection XIIX, Ltd.*

**CERTIFICATE OF SERVICE**

Pursuant to U.S. Court of International Trade Rule 4(b) and (h), I hereby certify that on April 2, 2021, copies of Plaintiff's Summons and Complaint were served on the following parties by certified mail, return receipt requested:

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

Attorney-In-Charge
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

General Counsel Greta Peisch
Office of the General Counsel
Office of the U.S. Trade Representative
600 17th Street, NW
Washington, DC 20508

Chief Counsel Scott K. Falk
Office of Chief Counsel
U.S. Customs & Border Protection
1300 Pennsylvania Ave., NW
Washington, DC 20229

/s/  Robert J. Leo